IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANET ERB,                              :
        Plaintiff              : No. 3:07-CV-1961
                                    :
        v.                     : (JUDGE CONABOY)
                                      : (MAGISTRATE JUDGE PRINCE)
BOROUGH OF CATAWISSA, ET AL.,           :
        Defendants             :

# REPORT AND RECOMMENDATION

## I. Procedural Background

Pursuant to an Order entered on June 4, 2010 (Doc. 73), the Honorable Thomas I. Vanaskie[1] referred the Defendants' pending Motion for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff initiated this action on October 25, 2007 asserting federal and state law claims regarding her termination as Secretary to the Borough of Catawissa. (Doc. 1). An amended complaint was filed on March 14, 2008 (Doc. 42), followed by a second amended complaint filed on December 29, 2008. (Doc. 42). Specifically, the second amended complaint alleges violations of the Age

---

[1] The case was subsequently reassigned to the Honorable Richard P. Conaboy.

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and the

Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, along with

additional claims of, *inter alia*, fraud, discrimination and due process violations.

Named as Defendants are the Borough of Catawissa; Edward Rhoades, George

Romania, Barbara Reese and Dorothy Linn, present members of the Catawissa

Borough Council who were also members at times relevant to the actions giving

rise to the second amended complaint; Donald Stewart, John Sabol and Linda

Kashner, former members of the Catawissa Borough Council at times relevant to

the actions giving rise to the second amended complaint; and Mayor Harold

Kitchen.[2]

By Order dated September 30, 2009, Judge Vanaskie granted in part and

denied in part a Motion to Dismiss filed by Defendants (Doc. 55).[3]  On May 14,

2010, Defendants filed a Motion for Summary Judgment (Doc. 69) along with a

Brief in Support (Doc. 70), a Statement of Facts (Doc. 71) and Exhibits (Doc. 72).

---

[2]  Plaintiff has agreed to dismiss Defendant Kitchen from this action.  (Doc. 78, n.1).

[3]  The Order dismissed Plaintiff's official capacity claims against the individual Defendants (Counts III and V); her wrongful termination claim (Count VII); and her defamation, invasion of privacy, false light and intentional infliction of emotional distress claims against members of the Catawissa Borough Council and the Mayor of Catawissa.  (Count IX, X and XIII).

Plaintiff filed a Brief in Opposition (Doc. 78) and a Response to the Statement of Facts (Doc. 77) on June 18, 2010. A Reply Brief was filed by Defendants on July 12, 2010, along with a Response to Plaintiff's Counter-Statement of Material Facts. (Docs. 81-82). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendants' Motion for Summary Judgment be denied.

## II. Factual Background

Viewing the facts in a light most favorable to Plaintiff reveals the following background: Plaintiff was hired as Secretary to the Catawissa Borough on May 4, 1994. She alleges she performed her work in a professional and competent manner.

At an executive session of Catawissa Borough Council on April 23, 2007, a unanimous decision was made by all Council members present to offer Plaintiff a severance package, with the understanding that if she did not agree to resign on these terms, she would be terminated. On April 26, 2007, Plaintiff alleges she was informed by Defendants Linn and Reese that she would be discharged from employment if she did not resign. She further claims that she was informed that she would be provided with certain benefits, in the form of a severance package, if she resigned. Plaintiff signed the resignation agreement on May 3, 2007.

Catawissa Borough Council unanimously accepted her resignation on May 7, 2007, but also unanimously agreed to disallow the severance package previously extended to her in the resignation agreement.

The Borough Secretary position was subsequently filled by Kimberly Rhoades, wife of Defendant Rhoades, who was fifteen (15) years younger than Plaintiff. Plaintiff maintains that her termination was in response to her support of another Council member for Council President over Defendant Romania as well as her non-support of Defendant Rhoades' political endeavors.

Defendants contend that Plaintiff's dismissal was attributable to her tardiness, attitude and her signing, rather than punching, timecards. Plaintiff counters that although these issues may have arisen during her tenure, there were no complaints with these issues at or around the time of her termination.

The present action followed. The claims of the second amended complaint remaining are: Counts I and VI–First and Fourteenth Amendment violations of Plaintiff's free speech and association rights; Counts II and IV–Plaintiff's procedural due process claims; Count VIII–actual fraud; Counts XI and XII–age discrimination under the ADEA; and Counts XIV-XVI–violations of the PHRA.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary

judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse

Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. *See* Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## IV. Discussion

*(A) Counts I and II*

Counts I and II of Plaintiff's claim are bought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989).

The second amended complaint asserts section 1983 violations against the Borough of Catawissa. "A public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent

official policy." Reitz v. Bucks County, 125 F.3d 139, 144 (3d Cir. 1997) (citing

Monell v. New York City Dep't of Social Svcs., 436 U.S. 658, 690-91 (1978)). "A

policy is an official proclamation or edict of a municipality, while a custom is a

practice that is 'so permanent and well-settled as to virtually constitute law.'"

Crouse v. South Lebanon Twp., 668 F. Supp. 2d 664, 675 (M.D. Pa. 2009)

(Conner, J.) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)

(quoting, in turn, Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)

(citations omitted)). However, "[a] custom need not be 'formally approved by an

appropriate decision-maker,' but must be 'so widespread as to have the force of

law.'" Id. at 675-76 (quoting Natale v. Camden County Corr. Facility, 318 F.3d

575, 584 (3d Cir. 2003) (quoting, in turn, Board of County Com'rs of Bryan

County, Okl. v. Brown, 520 U.S. 397, 404 (1997)). Moreover, this court has

noted:

> The Third Circuit Court of Appeals has identified three scenarios
> under which the actions of a municipal employee may be considered
> the consequence of a municipal policy or custom. In the first, "the
> appropriate officer or entity promulgates a generally applicable
> statement of policy [or custom] and the subsequent act complained of
> is simply an implementation of that policy." Jiminez v. All Am.
> Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (quoting Natale,
> 318 F.3d at 584). The second scenario arises when there is no
> pronounced policy or custom, but the policymaker's action violates
> federal law. See id. In the final scenario, "the policymaker has failed
> to act affirmatively at all, [though] the need to take some action to

control the agents of the government is obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (quoting Natale, 318 F.3d at 584).

Crouse, supra at 676.

Although not in accordance with a municipal custom or policy, Plaintiff contends that the Defendant Borough of Catawissa, through the actions of the Borough Council, has breached the second scenario by violating federal law in her dismissal. Contrary to Defendants contentions, there is evidence sufficient to establish § 1983 liability on the part of the municipality under Monell if the fact-finder determines that, in the absence of a policy or custom of the Borough, Catawissa Borough Council acted in violation of federal law in Plaintiff's separation from employment therewith. As will be discussed hereinafter, the court finds that the Plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to whether her termination violated the ADEA and/or First Amendment. Consequently, a genuine issue of material fact exists as to whether the Borough of Catawissa is liable for the alleged violations of Plaintiff's rights, precluding summary judgment on this issue. *See* Brown, 520 U.S. at 405 ("[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the

municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances,"); McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (Monell liability may "attach when the [government official] has policy making authority rendering his or her behavior an act of official government policy[.]"); D.N. ex rel. Nelson v. Snyder, 608 F. Supp. 2d 615, 629 (M.D. Pa. 2009) (Conner, J.).

*(B) Due Process*

Plaintiff asserts that her due process rights were violated and her liberty rights impaired by Defendants failure to provide a pre-termination hearing. Whether such a hearing was required to be provided and whether the lack of such a hearing impaired Plaintiff's liberty interest will be examined.

*1. Pre-Termination Hearing*

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or

property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2005) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); *see also* Good v. City of Sunbury, 352 Fed. App'x. 688 (3d Cir. 2009).

When a governmental employee has a property interest in her employment, the Supreme Court has recognized that, prior to an involuntary separation, an employee must be afforded an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). Observing that the deprivation of one's livelihood is severe, enabling the employee to be heard and address the issues raised prior to termination carries apparent and significant value in reaching an informed decision on discharge. Id. at 543. "The governmental interest in immediate termination does not outweigh" the employee's private interest in retaining employment and some opportunity to present his side of the case. Id. at 543-44. "[A]ll the process that is due is provided by a pretermination opportunity to respond . . .[.]" Id. at 547-48.

Defendants allege that Plaintiff was given the opportunity to be heard and clear her name when, at the April 26, 2007 meeting with Defendants Reese and Linn, along with the Council Solicitor Anthony McDonald, Esquire, Plaintiff was notified that the Borough Council would vote on the severance package at the May

7, 2007 meeting. However, Defendants have provided no support in the record for how the Borough Council's vote on the severance package would give Plaintiff a opportunity to address the terms or circumstances of her departure. Accordingly, whether, in fact, she had notice of her opportunity to be heard is a factual dispute that cannot be resolved on a motion for summary judgment.

In the alternative, Defendants maintain that Plaintiff was required to request a name-clearing hearing, which she did not do. This argument was addressed by Judge Vanaskie in the September 30, 2009 Memorandum and Order, where he observed that "Defendants' argument that Plaintiff was required to request a name-clearing hearing in order to proceed with her procedural due process claim . . . is not supported by Third Circuit case law." (Doc. 55, p. 12, n. 8). Accordingly, Defendants present argument reiterating their position that Plaintiff was required to request a name-clearing hearing, as suggested by case law in the Fourth and Fifth Circuits, as well as another court in this Circuit, is unpersuasive. Judge Vanaskie's conclusion on this point is the law of the case and will not be disturbed. American Civil Liberties Union v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")

(quoting, in turn, <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." <u>Id.</u> (citation and quotation marks omitted).

*2. Liberty Interest*

Defendants next assert that Plaintiff has failed to establish that her liberty rights were impaired as a result of the lack of a pre-termination hearing. The Supreme Court has stated:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

<u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976). Only employment actions that are "(1) based on a 'charge against [the individual] that might seriously damage his standing and associations in the community ...' or (2) 'impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities[]'" implicate the Fourteenth Amendment. <u>Robb v. City of Philadelphia</u>, 733 F.2d. 286, 293 (3d Cir. 1984) (quoting <u>Board of Regent of State College v. Roth</u>, 408 U.S. 564, 573 (1972)).

Moreover, a plaintiff must demonstrate "that the allegedly stigmatizing

13

information was 'published' or otherwise disseminated by his . . . employer to the public." Chantel v. Reagan, 841 F.2d 1216, 1223 (3d Cir. 1988) (citing Bishop v. Wood, 426 U.S. 341, 348 (1976). "[A] plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest" in order to make out a due process claim for deprivation of a liberty interest in reputation. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing id.). This "stigma-plus" test has been applied to mean that an employee is deprived of a protected liberty interest when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination[.]" Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).

The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" Id. "To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Id. (citing Codd, supra 627-629 (internal citations omitted)). Although there is a question of whether the termination from public employment constitutes a sufficient "plus" when the plaintiff lacked a property interest in retaining her job, it has been held that a that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks

a property interest in the job he lost." Id. at 238.

In their present Motion, Defendants aver that Plaintiff has failed to satisfy the stigma-plus test because they made no statements regarding her separation from employment with the Borough and, consequently, she is unable to establish that any statements were stigmatizing or false. Plaintiff contends, however, that the silence of the Defendants allowed incorrect and unfair inferences to be drawn about the terms of Plaintiff's discharge. Public statements that Plaintiff was abandoning her job without notice were made by members of the public in attendance at the May 7, 2007 Borough Council meeting and, subsequently, by a media report appearing in the local newspaper on May 9, 2007. In the face of accusations by the public and reports by the media that Plaintiff resigned her position without notice, whether Defendants silence constitutes their dissemination of a false impression of her is unsettled. Consequently, a question of fact to be decided by the fact-finder such as this precludes summary judgment on this issue.

### (C) Free Speech and Association

Political discharge cases are governed generally by two Supreme Court decisions: Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). In Elrod, the Supreme Court held that discharging certain public

employees solely on the basis of their political affiliation infringes upon their First Amendment rights to belief and free association. Id. at 355-57. However, it specifically exempted from this general prohibition the politically-motivated discharge of persons who hold confidential or policy making positions. Id. at 367-68. While there is no bright-line test to determine whether an employee holds such a position, Elrod suggests that "consideration should ... be given to whether the employee acts as an advisor or formulates plans for the implementation of broad policy goals." Id. at 368. Subsequently, in Branti, the Supreme Court addressed whether, in certain situations, political affiliation is a legitimate factor for a public hiring authority to consider. Branti, 445 U.S. at 518. It determined that such a factor may be appropriate. "[T]he question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id.

Based on these general principles, the Court of Appeals for the Third Circuit has developed a three-part test to establish a prima facie case of wrongful discharge based on political patronage. A plaintiff "must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision."

Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007)

(citing Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997); Goodman v. Pa.

Tpk. Comm'n, 293 F.3d 655, 663-64 (3d Cir. 2002).

Defendants assert that Plaintiff cannot establish a prima facie case of

political discharge because she cannot demonstrate that her political affiliation

was a substantial or motivating factor in Defendants decision to offer her a

severance package or to accept her resignation.  Alternatively, they maintain that,

inasmuch as she had access to confidential information, Plaintiff's job as secretary

was a confidential position for which political affiliation is an appropriate

requirement for the effective performance of duties.  It must therefore be

determined first whether Plaintiff has put forth enough evidence to establish a

prima facie case, and, if so, whether Defendants have established that political

affiliation was a necessary requirement to the effective performance of the

position.

 1. *Prima Facie Case*

It is uncontested that Plaintiff has met the first element of a prima facie case

of political discharge, *to wit*., that she was employed at a public agency in a

position that does not require political affiliation.[4]  Defendants challenge

Plaintiff's ability to establish the second and third prongs of a prima facie case of

political discharge.  They assert that (1) Plaintiff "did not maintain political

affiliation," *i.e.* did not engage in constitutionally protected conduct, and (2) that

Plaintiff cannot demonstrate that her constitutionally protected conduct was a

substantial or motivating factor in her discharge.  Indeed, Defendants assert that

Plaintiff has put forth no evidence to establish this last element.

However, as Plaintiff notes, the record suggests that hostilities existed

between her and some members of Council regarding coalitions on the governing

body.  She points to Defendant Romania's deposition testimony that he was

replaced as Council president due to Plaintiff's influence on other Council

members.  (Doc. 77, ¶ 21; Doc. 81, ¶ 21).  Additionally, Romania believed that

Plaintiff pursued an agenda concerning personnel on Borough Council.  (Id. at ¶¶

22).  These facts suggest that there was some division between those members of

Borough Council with whom Plaintiff got along well and those with whom she

had a more difficult relationship.  Such loyalties to certain members may be

considered political affiliation protected under the First Amendment.  Plaintiff

---

[4]  The court recognizes that, should a prima facie case be stated, Defendants
argue, alternatively, that the position is one that does require political affiliation.

maintains that her termination was engineered by certain Council members in

retaliation for her past actions of non-support of them and her support for other

members.  A finder of fact believing this rationale could conclude that her political

affiliation with some but not other members of Borough Council was the driving

force behind her discharge.  Accordingly, it remains a factual issue of whether

Plaintiff was discharged due to job performance reasons cited by the Defendants

or whether Plaintiff was dismissed due to her political allegiances and

associations.

*2. Is Political Affiliation a Requirement to the Position of Secretary?*

Alternatively, Defendants submit that Plaintiff's position as secretary was a

confidential post for which political affiliation was a necessary trait.  They

maintain that Plaintiff's lack of decision-making function as secretary is not

dispositive on this issue but suggest that the court be guided by the fact that she

had access to confidential information, citing dicta of Zold v. Township of

Mantua, 935 F.2d 633, 638-39 (3d Cir. 1991).

However, the Zold case, in fact, held that the municipality failed to establish

that political affiliation was appropriate requirement for effective performance of

the position of deputy township clerk.  Additionally, it is worth observing that,

although she handled confidential matters such as typing correspondence to the

solicitor, maintaining personnel files and gathering information on money spent by the Borough, neither Plaintiff's description of her duties nor the Borough's job description of her position, both of which included, for the most part, general clerical work and ministerial tasks, indicate party affiliation would impact job performance. Defendants have not demonstrated that the job responsibilities involved decision-making regarding office programs, policy-making, development of broad goals for the office, authority to hire or fire individuals or budget-drafting. Indeed, it appears that Plaintiff lacked any discretionary authority or advisory role.

Defendants have failed to demonstrate that Plaintiff's political affiliation is an appropriate requirement for the effective performance of the duties of secretary. As noted in Zold, "[t]here [is not] any function among the . . . duties as an administrative official for which political affiliation could reasonably be deemed essential." Id. at 638. Consequently, it is recommended that the Motion for Summary Judgment be denied on this issue. *See* Elrod, *supra* at 368 ("Since ... it is the government's burden to demonstrate an overriding interest in order to validate an encroachment on protected interests, the burden of establishing this justification" rests with the government employer."); Zold, *supra* at 640 (The defendant has a "substantial burden of demonstrating that political affiliation is an

appropriate requirement for the effective performance of the [job].") .

*(D) Fraud*

The second amended complaint also states a caus of action against the individual Defendants for actual fraud in misrepresenting to Plaintiff the terms and conditions of the severance package. To prove fraud under Pennsylvania law, a plaintiff must demonstrate: (1) misrepresentation; (2) material to transaction; (3) made falsely; (4) with intent of misleading another to rely on it; (5) resulting justifiable reliance; and (6) injury proximately caused by reliance. Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 136 (3d Cir. 2005); *see also* Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000) (The common law elements of fraud "include a material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages.") (citing Hammer v. Nikol, 659 A.2d 617, 620 (Pa. Commw. 1995)).

Defendants maintain not only that Plaintiff has failed to establish that there was a misrepresentation made by, and on behalf of, the individual Defendants but also that Plaintiff's reliance on any such misrepresentation was not justifiable and reasonable. On the issue of misrepresentation, Plaintiff has alleged that, at the April 26, 2007 meeting with two of the Defendants, she was told that she would be terminated if she did not accept the severance package offered to her.

She further asserts Defendants Linn and Reese, along with the Council solicitor, stated that they were authorized to offer her the severance package, that all Council members were in agreement, and that the offer of severance in lieu of termination was already decided.

Defendants attempt to frame the issue by claiming that the Defendants' statements at the April 26, 2007 meeting were, in fact, accurate because Plaintiff has put forth no evidence to suggest that, had she not accepted the offer of severance, she would not have been fired. However, the proper inquiry is not what would have occurred had Plaintiff not accepted the severance package but rather what would, or should, have happened upon her agreement to resign. As Plaintiff claims, (1) Defendants represented that if she resigned she would receive the severance package; (2) Plaintiff resigned; (3) Plaintiff did not receive the severance package. Accordingly, inasmuch as Plaintiff has put forth facts sufficient to establish that the assertions of Defendants Linn and Reese were false when they indicated to her that the offer of severance was authorized and "already decided" and "that all [members of] Council [were] in agreement," and Defendants subsequently showed these representations were misleading or inaccurate, Plaintiff has demonstrated that a fact-finder could construe Defendants statements as misrepresentations.

Moreover, justifiable reliance is typically a question of fact for the fact-finder to decide.  First United Bank & Trust v. PNC Financial Services Group, Inc., 667 F. Supp. 2d 443, 455 (M.D. Pa. 2009) (Kane, C.J.) (citing Toy v. Metropolitan Life Ins. Co., 593 Pa. 20, 928 A.2d 186, 208 (2007) (citing, in turn, Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285 A.2d 451, 455 (1971)); In re Atlantic Fin. Management, Inc. Sec. Litig., 718 F. Supp. 1003, 1008 (D. Mass. 1988) ("[T]he question of justifiable reliance is most appropriately left to the jury. Reasonableness of reliance involves all of the elements of the transaction, and is rarely susceptible of summary disposition."); Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assoc., 39 F. Supp. 2d 517 (M.D. Pa. 1999) (Vanaskie, J.).  Here, there is no question that Plaintiff has alleged that she justifiably relied on the alleged misrepresentations.  Although Defendants contend that she knew that the  agreement regarding the severance package was not signed by Council members and, additionally, that it required formal public action, by way of a vote by Council at the May 7, 2007 meeting, in order to be finalized, Plaintiff testified at her deposition that Defendants Linn and Reese indicated that they were authorized to offer her the severance package and that all members of council were in agreement with it.  It is conceivable that such statements could lend the impression that any official public action or signatures were a minor

formality to a certain conclusion that the package would be approved.

Given these circumstances, there is a factual dispute as to whether
Plaintiff's reliance was reasonable and justifiable. Accordingly, it is
recommended that the Motion for Summary Judgement be denied as to Plaintiff's
fraud count.

*(E) Age Discrimination*

Title VII prohibits discrimination against an individual on the basis of that
individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2.
Age is not a proscribed basis for discrimination under Title VII. Id. The Age
ADEA, however, is the legislatively enacted provision that prohibits
discrimination on the basis of an individual's age and it mirrors Title VII in its
substantive provisions. *See e.g.*, Ahlmeyer v. Nevada System of High Ed., 555
F.3d 1051, 1058 (9th Cir. 2009) ("Title VII of the Civil Rights Act of 1964
provides an avenue for plaintiffs to assert claims for employment discrimination
based on 'race, color, religion, sex or national origin ... In its substantive
provisions, the ADEA mirrors Title VII...."). The PHRA likewise prohibits
discrimination by employers on the basis of age. *See* 43 P.S. § 954(a).[5]

_____

[5] The court will analyze Plaintiffs' ADEA and PHRA claims under the
same standards inasmuch as courts generally have interpreted the PHRA's parallel
(continued...)

In the absence of direct evidence, cases such as Plaintiff's are examined

under the evidentiary framework first set forth by the Supreme Court in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  With respect to an

allegation of age discrimination, under the McDonnell Douglas framework:

> the plaintiff bears the burden of proof and the initial burden of
> production, having to demonstrate a prima facie case of
> discrimination by showing first, that the plaintiff is forty years of age
> or older; second, that the defendant took an adverse employment
> action against the plaintiff; third, that the plaintiff was qualified for
> the position in question; and fourth, that the plaintiff was ultimately
> replaced by another employee who was sufficiently younger to
> support an inference of discriminatory animus. Once the plaintiff
> satisfies these elements, the burden of production shifts to the
> employer to identify a legitimate non-discriminatory reason for the
> adverse employment action. If the employer does so, the burden of
> production returns to the plaintiff to demonstrate that the employer's
> proffered rationale was a pretext for age discrimination. At all times,
> however, the burden of persuasion rests with the plaintiff.

Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).  "If the

employer offers evidence of a legitimate, non-discriminatory reason for the

adverse employment decision, the plaintiff must produce evidence 'from which a

factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more

_____

[5](...continued)
provisions in Title VII, the ADA, or the ADEA in accordance with its federal
counterparts.  Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

likely than not a motivating or determinative cause of the employer's action.'"
Potoski v. Wilkes University, 692 F. Supp. 2d 475, 484 (M.D. Pa. 2010)
(Vanaskie, J.) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To
prevail on such a claim, the plaintiff must establish by a preponderance of the
evidence that age discrimination was the "but-for" cause of the challenged adverse
employment action. Gross v. FBL Fin. Servs., Inc., --- U.S. ----, 129 S.Ct. 2343,
2351 (2009).

Defendants do not challenge that Plaintiff can establish her initial burden of
demonstrating a prima facie case of age discrimination.[6] They assert, rather, that
Plaintiff was offered the opportunity to accept the severance package and resign
based on her job performance. Plaintiff contends, however, that the Defendants
orchestrated her dismissal in order to appoint Kim Rhoades, who is the wife of
Defendant Rhoades and is fifteen years Plaintiff's junior, to the position. Plaintiff
notes that issues with her job performance were well-removed in proximity of time

---

[6] Indeed, (1) Plaintiff was born in 1949; (2) she was presumably qualified
for the position, having held it for 13 years; (3) she has stated sufficient facts to
raise a genuine issue of material fact as to whether her resignation was
involuntary, so as to establish her dismissal from employment; and (4) her
replacement was 15 years her junior, a factor which could lead a reasonable jury to
infer discriminatory animus. See Sempier v. Johnson & Higgins, 45 F.3d 724, 729
(3d Cir. 1995) (as little as a five year age differential may suffice to raise an
inference of age discrimination).

to the April 27, 2007 meeting where her departure was broached. For example, her tardiness was not addressed at any point after October, 2005; at the same time, the issue of punch time cards, versus filling them out, was addressed and not subsequently revisited; and of the two (2) complaints by residents made against her, the more recent was over a year prior to the April, 2007 meeting with Defendants Linn and Reese. Plaintiff has, therefore, demonstrated such weaknesses or implausibilities in the Defendants' proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer that the employer did not act for [the asserted] non-discriminatory reasons. Fuentes at 765. Plaintiff has put forth sufficient evidence to allow the finder of fact to conclude that but-for her age, the adverse employment action would not have occurred.

Accordingly, regardless of their respective positions on this issue, whether Defendants' articulated reason for Plaintiff's termination is believable or if their actions suggest a discriminatory motivation is a question for the finder of fact that cannot be resolved on summary judgment. Consequently, it will be recommended that the Defendants' Motion be denied on this issue.

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that Defendants'

Motion for Summary Judgment (Doc. 69) be denied.


Date: July 21, 2010                           s/ William T. Prince
                                                    William T. Prince
                                                    United States Magistrate Judge