UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANET ERB,                           :
                                     :
            Plaintiff,               :CIVIL ACTION NO. 3:07-CV-1961
                                     :
            v.                       :(JUDGE CONABOY)
                                     :(Magistrate Judge Prince)
BOROUGH OF CATAWISSA, EDWARD         :
RHOADES, GEORGE ROMANIA, BARBARA     :
REESE, DOROTHY LINN, DONALD          :
STEWART, JOHN SABOL, LINDA KASHNER,  :
MAYOR HAROLD KITCHEN,                :
                                     :
            Defendants.              :
_____

**MEMORANDUM**

Here we consider Magistrate Judge William T. Prince's Report
and Recommendation (Doc. 83) concerning Defendants' Motion for
Summary Judgment (Doc. 69). With their motion, Defendants seek
summary judgment in their favor on all claims remaining in
Plaintiff's Second Amended Complaint (Doc. 42). (Docs. 69, 69-2.)
Magistrate Judge Prince recommends that the Court deny the motion.
(Doc. 83 at 28.) Defendants filed objections to the Report and
Recommendation, identifying five specific bases of error: 1)
Defendant Kitchen is properly dismissed from this action; 2)
Plaintiff's Due Process rights were not violated; 3) there is no
genuine issue of material fact as to whether Plaintiff's political
affiliation was a substantial or motivating factor in the adverse
employment decision; 4) there is no genuine issue of material fact
as to whether any misrepresentations were made to Plaintiff
regarding the severance package; and 5) there is no genuine issue

of material fact as to whether Defendants voted to accept Plaintiff's resignation and/or offer her the severance package because of her age. (Docs. 84, 85.)

Plaintiff filed a brief in opposition to Defendants' objections on August 12, 2010, agreeing that Defendant Kitchen is properly dismissed from the action and asserting that genuine issues of material fact exist regarding the matters raised in Defendants' other objections. (Doc. 86 at 5-6.) Defendants did not file a reply brief and the time for doing so has passed. Therefore this matter is ripe for disposition.

For the reasons discussed below, we adopt the Report and Recommendation (Doc. 83) in part. We conclude that Defendants' Motion for Summary Judgment (Doc. 69) is properly granted in part and denied in part.

## I.  Background

Defendants do not object to the "Factual Background" set out by Magistrate Judge Prince. Therefore we adopt that factual background and repeat it here.

> Viewing the facts in a light most favorable to Plaintiff reveals the following background: Plaintiff was hired as Secretary to Catawissa Borough on May 4, 1994. She alleges she performed her work in a professional and competent manner.
>
> At an executive session of Catawissa Borough Council on April 23, 2007, a unanimous decision was made by all Council members present to offer Plaintiff a severance package, with the understanding

2

that if she did not agree to resign on these terms, she would be terminated. On April 26, 2007, Plaintiff alleges she was informed by Defendants Linn and Reese that she would be discharged from employment if she did not resign. She further claims that she was informed that she would be provided with certain benefits, in the form of a severance package, if she resigned. Plaintiff signed the resignation agreement on May 3, 2007. Catawissa Borough Council unanimously accepted her resignation on May 7, 2007, but also unanimously agreed to disallow the severance package previously extended to her in the resignation agreement.

The Borough Secretary position was subsequently filled by Kimberly Rhoades, wife of Defendant Rhoades, who was fifteen (15) years younger than Plaintiff. Plaintiff maintains that her termination was in response to her support of another Council member for Council President over Defendant Romania as well as her non-support of Defendant Rhoades' political endeavors.

Defendants contend that Plaintiff's dismissal was attributable to her tardiness, attitude and her signing, rather than punching, timecards. Plaintiff counters that although these issues may have arisen during her tenure, there were no complaints with these issues at or around the time of her termination.

The present action followed. The claims of the second amended complaint remaining are: Counts I and VI--First and Fourteenth Amendment violations of Plaintiff's free speech and association rights; Counts II and IV--Plaintiff's procedural due process claims; Count VIII--actual fraud; Counts XI and XII--age discrimination under the ADEA; and Counts XIV-XVI--violations of the PHRA.

(Doc. 83 at 3-4.)

3

## II. Discussion

### A. STANDARD OF REVIEW

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985). Moreover, when no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation. *See Cruz v. Chater*, 990 F. Supp. 375, 378 (M.D. Pa. 1998). However, when objections are filed to a magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made. *See Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).

### B. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(*citing* Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

4

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (*citing Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When Rule 56(e) shifts the burden of proof to the non-

moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## C. DEFENDANTS' OBJECTIONS

As noted above, Defendants identify five objections to the Report and Recommendation. We will discuss each objection using the *de novo* standard of review.

### 1. Summary Judgment in Favor of Defendant Kitchen

Defendants first assert that the Report and Recommendation should not be adopted to the extent it does not specifically include a recommendation that Defendant Kitchen is entitled to summary judgment on all remaining claims asserted against him. (Doc. 85 at 5.) Plaintiff asserts that she consented to dismissal of the claims against Defendant Kitchen in her brief in opposition to Defendants' Motion for Summary Judgment. (Doc. 86 at 11.)

In Defendants' Motion for Summary Judgment, they asserted that "Moving Defendant Kitchen is entitled to summary judgment as to all

remaining claims asserted against him as there is no evidence of record that he had any involvement whatsoever regarding Plaintiff's separation of employment with the Borough." (Doc. 69 ¶ 58.) Because Plaintiff does not object to granting summary judgment in favor of Defendant Kitchen (Doc. 86 at 11), we grant Defendants' motion in this respect. To the extent that Magistrate Judge Prince recommends Defendants' Motion for Summary Judgment be denied (Doc. 83 at 28), we do not adopt the Report and Recommendation as to Defendant Kitchen.

## 2. *Due Process*

Defendants argue that the Report and Recommendation should not be adopted with regard to the Magistrate Judge's finding that there is a genuine issue of material fact concerning whether Plaintiff's due process rights were violated. (Doc. 85 at 6.) Plaintiff clarifies that she does not claim she had a property interest in her employment with the borough: "Ms. Erb's claim and her evidence is that her liberty interest in her public employment was impaired pursuant to the stigma-plus analysis, as detailed in *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006)." (Doc. 86 at 11.) For the reasons discussed below, we concur with the Magistrate Judge that Plaintiff's liberty interest claim should go forward.

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that: "(1) he was

deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 *(citing Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

The United States Supreme Court has held that an individual has a protectable liberty interest in reputation. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437. In *Hill*, the Third Circuit Court of Appeals explained that reputation alone is not an interest protected by the Due Process Clause: "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right." *Hill*, 455 F.3d at 236 (citations omitted). *Hill* further explained that "[i]n the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (*quoting Codd v. Velger*, 429 U.S. 624 (1977)). In such a situation, "the creation and dissemination of the false and defamatory impression is the 'stigma,' and the termination is the

'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Id.*

The "stigma" prong of the test is satisfied if it is alleged that the purportedly stigmatizing statements were made publicly. *Id.* at 237 (citations omitted). The "plus" in a "stigma-plus" claim may be the loss of a job in which the plaintiff did not hold a property interest as a matter of state law. *Id. Hill* concluded that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." *Id.* at 238

If an alleged deprivation of a liberty interest in reputation is protectable under the due process clause, the process due is a name-clearing hearing. *Id.* at 239. A plaintiff's failure to request such a hearing is not fatal to his claim. *Hill*, 455 F.3d at 239 n.19 (*citing Ersek v. Township of SPringfield*, 102 F.3d 79,84 n.8 (3d Cir. 1996)).

Defendants argue that to survive summary judgment on this claim there must be a genuine issue of material fact as to "(a) whether any stigmatizing statements were made publicly regarding her resignation; and (b) whether those statements were false." (Doc. 85 at 10.) Defendants posit that "the only possible evidence that Defendants created publicity by casting her in a notoriously negative light was through Defendants refusing or neglecting to

clarify Erb's separation of employment with the Borough." (*Id.*)
Defendants note there is no evidence that any Defendant made a
public statement about Plaintiff's retirement or created publicity
casting Plaintiff in a notoriously negative light or cause any such
publicity to be printed or circulated. (*Id.*) Defendants further
note that neither Plaintiff nor Magistrate Judge Prince set forth
any case law which holds that silence can amount to the creation of
a defamatory impression. (*Id.*)

Plaintiff responds that "Defendants cite no authority in their
brief that the speech and conduct of the Defendants in announcing
that Ms. Erb had resigned was not actionable." (Doc. 86 at 12.)
Noting that the falsity of a statement is a question of fact for
the jury (*id.* (*citing Willing v. Mazzocone*, 393 A.2d 1155 (Pa.
1978); *Dougherty v. Boyertown Times*, 547 A.2d 778 (Pa. Super.
1988))), Plaintiff asserts that she has satisfied the "stigma"
prong because she has shown that the comments were made public and
were false and she has satisfied the "plus" prong because she was
forced to resign (*id.*). Plaintiff contends that the following
statements deprived her of a protectable liberty interest:

> Ms. Erb's resignation letter was read at the
> public meeting and its acceptance was moved and
> passed, without stating either that it was
> conditional upon the payment of severance or that
> it was submitted under threat of discharge. . . .
> When an unidentified member of the Council
> suggested that Council "would like to offer her .
> . . severance," a member of the public asked: "Why
> is Janet getting a severance package?" No one
> responded. . . . One citizen questioned: "Why

> should we give Janet Erb a severance when she
> walked out on the citizens in our time of need?" .
> . . Again, no one corrected the implicit
> falsehood.

(Doc. 86 at 12-13.)  Plaintiff also points to the following
editorial in the May 9, 2007, Press Enterprise as evidence that the
stigma continued:

> [T]he ire of Catawissans seems to be intensifying.
> That became apparent Monday when objections voiced
> by taxpayers stopped borough council from taking
> action on a topic that had little to do with
> electric rates.  It seems that even though long-
> time Borough Secretary Janet Erb had quit
> abruptly, the elected council were willing to
> offer her two months of severance pay and health
> insurance . . . no reputable business would offer
> a nice severance package to an employee who walked
> off the job without giving sufficient notice.

(Doc. 86 at 13.)

Plaintiff criticizes Defendants' assertion regarding the lack
of case law supporting the proposition that silence can create a
defamatory impression, noting that Defendants fail to provide any
authority holding to the contrary.  (*Id.*)  Plaintiff also points to
authority which addresses the potential legal implications of
partial truths: "pursuant to the Restatement (Second) of Torts §
529, a fraudulent misrepresentation may include a statement 'of the
truth so far as it goes but which the maker knows or believes to be
materially misleading because of [his] failure [to] state
additional or qualifying matter'" (*id.* at 13-14 (*citing In re
Unisys Corp.*, Civ. A. No. 03-3924, 2006 WL 2822261 (E.D. Pa. Sept.
29, 2006) (citing § 529))); "[d]efamation is fundamentally a state

11

cause of action" and, looking to Pennsylvania case law, "a statement is deemed to be defamatory 'if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule'" (*id.* at 14 (*quoting MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1054 (Pa. 1996))); "the touchstone in determining whether a statement is capable of defamatory meaning is how the statement would be interpreted by the average person to whom it is directed" (*id.* (*citing Marier v. Lance, Inc.*, 2009 WL 297713, at *3 (3d Cir. 2009))).

Plaintiff concludes that "the statements blackened Ms. Erb's reputation and exposed her to public hatred, contempt, and ridicule." (Doc. 86 at 14.) As noted above, Plaintiff points to the *Press Enterprise* newspaper editorial as evidence of the effect of Defendants' conduct. In support of her claim, Plaintiff also points to the fact that Defendants were present at the Borough Council meeting where the public expressed the belief that she had "abandoned" them yet they sat silently and allowed the public to believe she had quit without notice and improperly received a severance. (*Id.* at 14-15.) Plaintiff characterizes Defendants' conduct as "defamation by implication with regard to their refusal to correct false statements made at the Borough Council meeting and subsequently published in the Press Enterprise." (*Id.* at 15.)

As noted previously, Defendants did not file a reply brief in support of their objections to the Report and Recommendation.

12

Given the sequence of events and the manner in which Defendants handled Plaintiff's separation of employment from the Borough, we concur with the Magistrate Judge that Defendants' summary judgment motion be denied regarding Plaintiff's due process claim. We recognize that the "resign or else" manner of separation from employment is a difficult arena when it comes to what an employer should articulate regarding the separation. When an employer coerces an employee's resignation, the murky arena is self-created in that but-for the threat of termination there would be no resignation. The employer has created a situation where some measure of obfuscation or disingenuousness is inherent in the process, at least regarding any speech referring to the employee's separation as a "resignation." No bright line defines whether and when such speech becomes defamatory and, in this case, the question cannot be decided on summary judgment.[1]

### 3.  *Political Affiliation*

Defendants next object to Magistrate Judge Prince's Report and Recommendation regarding his recommendation that summary judgment be denied on Plaintiff's political affiliation claim. (Doc. 85 at 11.) For the reasons discussed below, we conclude that this claim goes forward.

---

[1] We further note that where a resignation is accompanied by a severance package, the chance of a positive inference regarding the employee's service and performance exists. In the situation presented here, no such inference could be drawn.

An employee's claim that she was terminated based on political affiliation comes under First Amendment rights of freedom of speech and association. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 268 (3d Cir. 2007). The First Amendment protects public employees from political discharge unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980); *see also Galli*, 490 F.3d at 270-71 (citations omitted)).

From the general principles established by the United States Supreme Court and Third Circuit precedent, the Third Circuit Court of Appeals has developed a three-part test to establish a First Amendment politically motivated discharge claim. *Galli*, 490 F.3d at 271. To make out a prima facie case, a plaintiff must show: "(1) she was employed at a public agency in a position that does not require political affiliation; (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Id*. (*citing Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)). If the employer claims to have properly discharged an employee because political affiliation is central to the job itself, the burden of proof shifts to the employer. *Id.* If a plaintiff makes out a prima facie case, the defendant "may avoid a finding of liability by proving by a preponderance of the evidence

14

that the same employment action would have been taken in the absence of the protected activity." *Id.* (internal quotation omitted).

Defendants' objection to the Magistrate Judge's finding on the political affiliation claim is twofold. They maintain that Plaintiff cannot satisfy the prima facie elements of this claim on alternative bases: 1) Plaintiff cannot establish the second and third elements of her claim because she has not produced evidence regarding political affiliation (Doc. 85 at 11-12); and 2) even if the Court concludes genuine issues of material fact exist as to these elements, Plaintiff cannot succeed on this claim because the confidentiality of Plaintiff's position does not entitle her to First Amendment protection (*id.* at 13-14). The latter is an argument which goes to the first element of the prima facie case, i.e., that Plaintiff was employed at a public agency in a position that does not require political affiliation. *Galli*, 490 F.3d at 271.

### a. Evidence of Political Affiliation

Defendants first maintain that Plaintiff cannot make out a prima facie case, asserting "[t]here is no evidence of record identifying the political affiliation of Plaintiff and any individual Defendant. There is no evidence of record that any of the 'hostilities' existed with members of any Individual Defendant who had political affiliations different than that of Plaintiff."

(Doc. 85 at 12.) Defendants also assert that because "[t]here is no evidence that the 'hostilities' were related to political affiliation in any regard," there is no evidence that political affiliation was a substantial or motivating factor in the employment action taken. (*Id.*) With these assertions, Defendants challenge Plaintiff's showing on the second and third elements of her prima facie case.

First addressing the second element of the prima facie case, i.e., whether Plaintiff engaged in constitutionally protected conduct, we conclude that Defendants read this element too narrowly in that their argument appears to address only political affiliation in the traditional sense. (*See*, *e.g.*, Doc. 85 at 12.) Plaintiff is correct that she need not show a particular party affiliation. (Doc. 86 at 16.) Although the traditional interpretation of political affiliation was that the employee had a different political affiliation, this is no longer the case and even employees with the same affiliation as the decision-maker may be entitled to First Amendment protection. *See*, *e.g.*, *Curinga v. City of Clairton*, 357 F.3d 305, 311 (3d Cir. 2004) (citations omitted). *Curinga* also noted that other courts of appeals "have broadened the definition of 'political affiliation' to include commonality of political purpose, partisan activity, and political support." *Id.* (citations omitted). The Third Circuit has given broad construction to this element, finding that First Amendment

protection in this area is not limited to political affiliation, it includes "political unaffiliation or 'failure to support' the official or party in power." *Galli*, 490 F.3d 265; *see also Robertson v. Fiore*, 62 F.3d 596, 600-01 (3d Cir. 1995); *Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1995). Because Defendants neither acknowledge the broad interpretation of this element nor argue that Plaintiff has not presented evidence that there were hostilities between her and Councilmen Romania and Rhoades, Defendants have not met their initial burden of showing an absence of a genuine issue of material fact regarding the second and third elements of her prima facie case.

**b.    Political Affiliation as a Job Requirement**

As noted above, Defendants alternatively argue that even if the Court concludes there is a dispute regarding the second and third elements of the prima facie case, Plaintiff is not entitled to First Amendment protection because her position was confidential in nature. (Doc. 85 at 13.) For the reasons discussed below, we disagree.

Defendants' argument goes to the first element of the prima facie case, i.e., a plaintiff's need to show she was employed at a public agency in a position that does not require political affiliation, *Galli*, 490 F.3d at 271. If the employer claims to have properly discharged the employee because political affiliation is central to the job, the burden shifts to the employer. *Id.*

17

*Galli* set out the legal framework court's should use in considering

this issue. *Id.*

> While permitted political patronage lies
> in a gray area, employers are allowed to make
> employment decisions based on political
> affiliation when "policymaking positions are
> at issue"; however, "[n]o clear line can be
> drawn between policymaking and
> nonpolicymaking positions." *Elrod* [*v.
> Burns*], 427 U.S. [347], 367 [(1976)]. In
> *Brown v. Trench*, our Court clarified this
> line by setting out several factors that
> should be considered when determining whether
> political affiliation is an appropriate
> precondition for a government position. 787
> F.2d 167, 169 (3d Cir. 1986). These factors
> include whether the employee has duties that
> are non-discretionary or non-technical,
> participates in discussions or other
> meetings, prepares budgets, possesses the
> authority to hire and fire other employees,
> has a high salary, retains power over others,
> and can speak in the name of policymakers.
> *Id.* The "key factor seems to be not whether
> the employee was a supervisor or had a great
> deal of responsibility[,] but whether [she]
> has meaningful input into decision-making
> concerning the nature and scope of a major []
> program." *Armour* [*v. County of Beaver, Pa.*],
> 271 F.3d [417], 429 [(3d Cir. 2001)]
> (citations and quotations omitted).

*Galli*, 490 F.3d at 271. Defendants bear a "substantial" burden in

this regard. *Zold*, 935 F.2d at 640. The inquiry into the nature

of the responsibilities and the function of a given position is

particularly fact-specific. *Armour*, 271 F.3d at 428 (citation

omitted).

Defendants cite Third Circuit cases they deem relevant to the

discussion here: "'should a difference in party affiliation be

highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment[]'" (Doc. 85 at 14 (*quoting Ness v. Marshall*, 660 F.2d 517, 521 (3d Cir. 1981))); "'access to confidential information may support a political-affiliation job requirement even in the absence of a decision-making function[]'" (*id.* (*quoting Zold v. Township of Mantua*, 935 F.2d 633, 638-39 (3d Cir. 1991))).  Defendants maintain that Plaintiff admitted at her deposition that her position was confidential and the undisputed facts show the position was confidential in nature.  (Doc. 85 at 14.)  In support of the latter, Defendants point to the following: Plaintiff would type letters from the Borough to the solicitor; she had a key to the file cabinets containing personnel files and Borough records; and she gathered figures on money spent by the Borough for one year to prepare the budget for the next year.  (*Id.*)

Plaintiff refutes the confidential characterization of her job and states that by statute her duties are defined with "[t]he verbs . . . 'attend,' 'keep,' 'transcribe,' 'preserve,' 'have custody of,' 'certify,' 'attest,' 'record,' 'file,' 'furnish,' and 'deliver.'" (Doc. 86 at 18 (*quoting* 53 P.S. § 4611).)  Plaintiff also argues that her official job description and her own description of her duties demonstrate the clerical nature of her job.  (Doc. 86 at 18 (*citing* Plaintiff's Exhibits 1 and 2).)

Plaintiff also maintains that Defendants do not provide contrary evidence and there is no suggestion anywhere in the record that her advice or counsel was sought or used as to matters of policy. (*Id.* at 19.) Plaintiff discounts Defendants' reliance on *Zold*, noting that the Third Circuit Court of Appeals found that the deputy clerk position was not one for which political affiliation was an appropriate requirement. (Doc. 86 at 19.) Plaintiff adds that no cases have held that access to confidential information is sufficient for finding that political affiliation is an appropriate requirement. (*Id.*)

We conclude that Defendants have failed to meet their burden of showing the necessity for shared political affiliation in the position of Borough secretary. Given Defendants' "substantial" burden in this regard, *Zold*, 935 F.2d at 640, and the necessity of a fact-specific inquiry, *Armour*, 271 F.3d at 428 (citation omitted), Defendants' recitation of tasks performed by Plaintiff which they deem confidential (*see*, *e.g.*, Doc. 85 at 14), without more, is insufficient to meet this burden. In their discussion of this issue, Defendants do not address what the Third Circuit Court of Appeals has identified as the "central question" in most political patronage cases--"whether the employee had meaningful input into decision making." *Armour*, 271 F.3d at 432 (citation omitted). Although *Armour* inferred that "a high level of confidentiality" might be enough to signify that political

affiliation is a job requirement, the Circuit Court also determined that it could not make this conclusion regarding the county commissioner's secretary's position based on the record presented without weighing evidence, a task reserved for the fact-finder rather than the court. 271 F.3d at 433. *Armour* added that a jury could find that the job duties of the commissioner's secretary were "more analogous to 'the most routine clerical tasks,' [*Zold*, 935 F.2d] at 639, than to tasks involving a high level of confidentiality." *Armour*, 271 F.3d at 433; *see also Sterner v. Twp. of Tunkhannock*, Civ. A. No. 3:04-CV-2636, 2006 WL 1004829 (M.D. Pa. April 18, 2006) (finding factual dispute as to whether Township secretary/treasurer position rendered her a policy making or confidential employee allowing political affiliation requirement).

As in *Armour*, here the parties dispute whether political affiliation is an appropriate job requirement (Doc. 85 at 13-14; Doc. 86 at 18-19) and specifically disagree about the confidential nature of the job (Doc. 71 § 8; Doc. 77 ¶ 8). As to the latter, Defendants assert that Plaintiff considered her position with the Borough as confidential in nature (Doc. 71 § 8 (*citing* Plaintiff's Deposition Testimony at 67, 191, Exhibit A, Doc. 72-2)); Plaintiff disputes this statement as "misleadingly incomplete" (Doc. 77 § 8). Plaintiff asserts that she testified "that she received information, such as personnel records, which she was required to

21

keep confidentially, and she did not consider that by this duty of confidentiality, her political affiliation or lack of political affiliation was any factor in her ability to keep such information confidential in fact." (Doc. 77 § 8 (*citing* Plaintiff's Dep. 190:15-191:19, Exhibit 5, Doc. 77-6).) The record before us does not allow the Court to make a determination on this issue. Because weighing of evidence is for the jury, summary judgment is not proper and Defendants' motion is denied as to Plaintiff's First Amendment political affiliation claim.

### 4.   *Fraud*

Defendants object to Magistrate Judge Prince's finding that a genuine issue of material fact exists as to whether any misrepresentations were made regarding the severance package. (Doc. 85 at 15.) For the reasons discussed below we concur with the Magistrate Judge on this issue.

As set out in the Report and Recommendation, to prove fraud under Pennsylvania law, a plaintiff must show the following: 1) misrepresentation; 2) material to the transaction; 3) made falsely; 4) with intent of misleading another to rely on it; 5) resulting justifiable reliance; and 6) injury proximately caused by reliance. (Doc. 83 at 21 (*citing Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 136 (3d Cir. 2005); *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. 2000)).)

Defendants assert that no misrepresentation was made at the

22

meeting where Plaintiff was approached by Defendants Reese and Linn and Solicitor McDonald and presented with the option of resigning with a severance package or being terminated. (Doc. 85 at 16.) The argument offered in support of this assertion is "there was no misrepresentation made because there is no evidence that Plaintiff would not have been terminated if she did not accept the severance package." (*Id.*)

As Magistrate Judge Prince found, this argument is misplaced in that "the proper inquiry is not what would have occurred had Plaintiff not accepted the severance package but rather what would, or should, have happened upon her agreement to resign." (Doc. 83 at 22.) In other words, here the misrepresentation had to do with the severance package being offered in conjunction with Plaintiff's resignation. Because Defendants do not properly frame the inquiry, we need not discuss this element further.

We also conclude that Defendants are not entitled to summary judgment on this claim based on their argument that Plaintiff cannot satisfy the justifiable reliance element. (Doc. 85 at 16.) Because Defendants Linn and Reese indicated to Plaintiff that they were authorized to offer her the severance package and all members of Council were in agreement (Doc. 86 at 20), we cannot say as a matter of law that Plaintiff was not justified in believing the vote was a formality and that all council members would honor the terms of resignation offered. Therefore, summary judgment on this

claim is not appropriate.

## 5. *Age Discrimination*

Defendants object to Magistrate Judge Prince's conclusion that there is a genuine issue of material fact regarding Plaintiff's age discrimination claims. (Doc. 85 at 17.) For the reasons discussed below, we concur with the Magistrate Judge and conclude summary judgment is not appropriate on Plaintiff's age discrimination claims.

To prove her ADEA claim, a plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2352 (2009). Following *Gross*, the Third Circuit Court of Appeals determined that the *McDonnell Douglas* burden shifting framework continued to apply to ADEA cases.[2] *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). Under the *McDonnell Douglas* framework,

---

[2] *Gross* determined that the burden shifting framework established by *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), does not apply to ADEA cases because shifting the burden of persuasion to the defendant in a mixed motive case is inconsistent with the ADEA requirement that the plaintiff prove the defendant took the adverse employment action "because of [the plaintiff's] age." *Gross*, 129 S. Ct. at 2350-51. *Smith* determined the use of the *McDonnell Douglas* framework is not prohibited by *Gross* because it imposes no shift in the burden of persuasion to the defendant. *Smith*, 598 F.3d at 691. Rather, under *McDonnell Douglas*, "once the employee establishes a prima facie case, the burden of production (i.e., of going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment action." *Id.* (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

> an employee must first establish a prima
> facie case of discrimination, after which the
> burden shifts to the employer to articulate a
> legitimate, non-discriminatory reason for its
> adverse employment decision.  If the employer
> articulates one or more such reasons, the
> aggrieved employee must then proffer evidence
> that is sufficient to allow a reasonable
> finder of fact to find by a preponderance of
> the evidence that the employer's proffered
> reasons are false or pretextual.

*Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005) (internal

citations and quotations omitted); *see also Milby v. Greater

Philadelphia Health Action*, 339 F. App'x 190, 192 (3d Cir. 2009)

(not precedential).  It is the burden of production, not of

persuasion, that shifts to the employer at the second stage of the

*McDonnell Douglas* framework; the burden of persuasion remains at

all times with the plaintiff.  *See*, *e.g.*, *Smith*, 589 F.3d at 691.

To establish a prima facie case, an employee generally must

show that she "(1) was over forty years old at the time of the

adverse employment decision; (2) is qualified for the position in

question; (3) suffered from an adverse employment decision; and (4)

that [her] employer replaced [her] with someone sufficiently

younger to permit a reasonable inference of age discrimination."

*Fasold*, 409 F.3d at 184 (citations omitted).  *Fasold* noted that

there is no hard-and-fast rule covering what a plaintiff must show

in order to establish the *McDonnell Douglas* prima facie showing.

"Rather, 'the presice elements of the prima facie case may vary

with the particular circumstances.'"  *Id.* (*citing Waldron v. SL*

25

*Indus., Inc.*, 56 F.3d 491, 494 n.3 (3d Cir. 1995); *Geraci v. Moody-Tottrup Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).

A defendant's burden of production is deemed satisfied "if the employer introduces evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the challenged decision. The employer is not required to prove that this nondiscriminatory reason actually motivated the action in order to shift the burden back to the plaintiff." *Robinson v. Matthews Intern. Corp.*, 368 F. App'x 301 (3d Cir. 2010) (not precedential).

At the third *McDonnell Douglas* step (a plaintiff's showing that the employer's proffered reasons are false or pretextual) an employee may survive summary judgment if the employee discredits the employer's proffered reasons either circumstantially or directly, or produces direct or circumstantial evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *see also Robinson*, 368 F. App'x. at 304. *Fuentes* also explained the quantum of proof required: "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment

26

action."[3]  *Fuentes*, 32 F.3d at 764.

Here Defendants specifically challenge Plaintiff at step three of the *McDonnell Douglas framework*.  (Doc. 85 at 21.)  They argue that Plaintiff has not raised sufficient doubt about their legitimate non-discriminatory reasons for terminating Plaintiff because a reasonable jury could not find they acted with discriminatory intent.  (*Id*.)  Plaintiff asserts that the only reasons Defendants proffer (at step two) were complaints about her attitude from residents, tardiness, and the signing instead of punching timecards.  (Doc. 86 at 23.)  Plaintiff contends that the passage of time between the reasons cited by Defendants and when they took the adverse action, as well as inconsistencies in Defendants' explanations and the fact that she received no intervening disciplinary action or warnings, show evidence of pretext.  (*Id.* at 23-25 (citations omitted).)

As required by *Fuentes*, we will review Plaintiff's rebuttal regarding each reason proffered by Defendants.  In response to Defendants' reliance on complaints about Plaintiff's attitude, Plaintiff states that there were only two documented complaints by

---

[3]  *Fuentes* clarified this standard with the note that the Court did not hold that the plaintiff had to cast doubt on each proffered reason in a vacuum: "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder" because, with such a finding, the employer's credibility may be damaged to the point that the factfinder may rationally disbelieve the rest.  32 F.3d at 764 n.7.

a resident and the most recent one was more than a year before her termination. (Doc. 86 at 23.) Plaintiff also points out that Defendant Rhoades' only specific recollection of a complaint about her behavior was attributed to his brother's brother-in-law at an uncertain time. (*Id.*) Arguing that the passage of time between the occurrence relied upon and the adverse employment action is pertinent to determining whether a causal relationship exists (*id.* (citing *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515 (3d Cir. 2003)), Plaintiff maintains that the passage of time in this case renders the proffered reason implausible and, therefore, could reasonably lead to a finding of pretext (*id.* at 26).

Regarding Defendants' reliance on Plaintiff's tardiness, Plaintiff also points to the implausibility of this reason based in part on the passage of time between when the issue arose and when the adverse employment action occurred. (Doc. 86 at 24.) Plaintiff points to the fact that she received a reprimand for alleged tardiness in October 2005 and the issue was never addressed again. (*Id.*) From October 2005 until January 10, 2006, Defendant Rhoades reviewed Plaintiff's timecards, the latter date being more than fifteen months before he called for her termination. (*Id.*) Plaintiff points to the fact that she was late four times in that review period (between one and six minutes late). (*Id.*)

Plaintiff next argues that Defendants' reliance on a problem with timecards is also implausible. (Doc. 86 at 24.) Plaintiff

points to the fact that the October 11, 2005, Memorandum addressing timecards and other issues provided that continuation of the problematic activities would require further disciplinary action yet no further discipline occurred. (*Id.*) She also identifies the lack of warning that she should be fired as evidence of pretext. (*Id.*)

Finally, Plaintiff contends that "[i]nconsistencies dominate Defendants' explanations." (Doc. 86 at 25.) In support Plaintiff contrasts Defendant Romania's assertion that he did not document alleged problems because he was unfamiliar with the need to maintain records with the fact that he kept daily records of his observations of Plaintiff from October 13, 2005, to November 17, 2005. (*Id.*) Plaintiff also identifies inconsistencies between Defendant Romania's testimony that he sought to take additional disciplinary action against Plaintiff but could not get the agreement of other counsel members and other Defendants' testimony that contradicts Defendant Romania's assertion. (*Id.*)

In their brief in support of their objections, Defendants assert that the fact that Plaintiff was not disciplined in close proximity to the adverse employment action cannot demonstrate weaknesses or implausibilities in their argument. (Doc. 85 at 20-21.) Defendants do not address the inconsistencies cited by Plaintiff.

We conclude these matters present questions for the

29

factfinder, not the Court, to answer as they involve credibility and weighing of evidence. Therefore, although Defendants have met their burden of production at stage two of the *McDonnell Douglas* inquiry, the question of whether Plaintiff can satisfy her burden at stage three is one which the Court cannot answer. Therefore, Defendants are not entitled to summary judgment on Plaintiff's ADEA claims and these claim go forward.

### III. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment (Doc. 69) is granted in part and denied in part. The motion is granted insofar as Defendant Kitchen is dismissed from this action; the motion is denied in all other respects. An appropriate Order follows.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: October 22

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
JANET ERB,                         :
                                   :
                                   :CIVIL ACTION NO. 3:07-CV-1961
         Plaintiff,                :
                                   :(JUDGE CONABOY)
         v.                        :(Magistrate Judge Prince)
                                   :
BOROUGH OF CATAWISSA, EDWARD        :
RHOADES, GEORGE ROMANIA, BARBARA    :
REESE, DOROTHY LINN, DONALD         :
STEWART, JOHN SABOL, LINDA KASHNER,:
MAYOR HAROLD KITCHEN,              :
                                   :
         Defendants.               :
```

---

**ORDER**

AND NOW, THIS 22nd DAY OF OCTOBER 2010, FOR THE REASONS SET OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.  The Magistrate Judge's Report and Recommendation (Doc. 83) is adopted in part;

2.  Defendants' Motion for Summary Judgment (Doc. 69) is granted in part and denied in part;

3.  The motion is granted insofar as Defendant Kitchen is dismissed from this action;

4.  The motion is denied in all other respects;

5.  The following claims from Plaintiff's Second Amended Complaint (Doc. 42) go forward:

    a.  Count I against Defendant Borough - First and Fourteenth free speech and association;

    b.  Count II against Defendant Borough - Fourteenth

Amendment Procedural Due Process;

c.  Count IV against Individual Defendants except as to Defendant Kitchen - Procedural Due Process;

d.  Count VI against Individual Defendants except as to Defendant Kitchen - First and Fourteenth free speech and association;

e.  Count VIII against Individual Defendants except as to Defendant Kitchen - Actual Fraud;

f.  Count XI against Defendant Borough - Age Discrimination in Employment Act;

g.  Count XII against Defendant Borough - Age Discrimination in Employment Act constructive discharge;

h.  Count XIV against Defendant Borough - Pennsylvania Human Relations Act Discrimination on Account of Age;

i.  Count XV against Defendant Borough - Pennsylvania Human Relations Act Constructive Discharge;

j.  Count XVI against Individual Defendants except as to Defendant Kitchen - Pennsylvania Human Relations Act Unlawful Discrimination Practices;

6. The Court will issue a separate order addressing pretrial proceedings and trial.

S/Richard P. Conaboy<br>
RICHARD P. CONABOY<br>
United States District Judge